OPINION
{¶ 1} Appellant State of Ohio appeals the decision of the Stark County Court of Common Pleas that granted Appellee Ervin Daniels' motion to suppress. The following facts give rise to this appeal.
 {¶ 2} During the evening of February 12, 2002, Officer Mark Diels and his partner, Officer Nick Mercorelli, from the Canton City Police Department, were on patrol in a marked cruiser in the City of Canton. The officers were patrolling the Towne Manor Motel, which is located in a high crime and drug area of the city. The officers drove by the Towne Manor Motel at approximately 11:15 p.m. The officers noticed appellee sitting, on the ground, about twelve feet away from the motel. The officers approached appellee, in the cruiser, and asked appellee to come over to the cruiser. Appellee was not doing anything illegal and there were no other individuals around him. Officer Diels frequently asks names of individuals when on patrol in this particular area because he often discovers individuals with outstanding arrest warrants.
 {¶ 3} However, instead of responding to Officer Diels request, appellee jumped up and ran into room 90, shutting the door behind him. Thereafter, Officer Diels exited his cruiser and knocked on the door to room 90. Torrie Raine answered the door and Officer Diels asked if he could talk to her about the man that just ran into the room. Torrie Raine gave Officer Diels permission to enter the room. Upon entering the room, Officer Diels heard the toilet flushing and saw appellee exiting the bathroom. Officer Diels immediately entered the bathroom and saw a baggie and rocks of what appeared to be crack cocaine floating in the toilet bowl. The officers retrieved this evidence and placed appellee under arrest charging him with tampering with evidence and possession of cocaine.
 {¶ 4} Following a preliminary hearing, the Canton Municipal Court bound appellee over to the Stark County Grand Jury. On April 24, 2002, the grand jury indicted appellee with tampering with evidence, possession of cocaine and possession of marijuana. Appellee entered a plea of not guilty to the charges contained in the indictment. Prior to trial, appellee filed a motion to suppress the evidence the officers seized from the motel room. The trial court conducted a hearing on appellee's motion and overruled the motion. The trial court concluded that the knock on the door by Officer Diels was the continuation of a consensual encounter and therefore, was not unconstitutional. Judgment Entry, June 11, 2002, at 4-5.
 {¶ 5} This matter proceeded to trial on August 13, 2002. At trial, Torrie Raine testified for the prosecution. Raine stated that she and appellee had rented the room for the evening and had just arrived. Raine further testified that after appellee entered the room, she opened the door for Officer Diels and he rushed into the room. Raine claims appellee was standing near the room's night stand and that he never entered the bathroom. Raine also testified that neither she nor appellee had been inside the bathroom since renting the room. Officer Diels' testimony differed from Raine's. Officer Diels testified that appellee was not doing anything illegal when he first observed him and that when appellee ran to his hotel room, he considered appellee to be obstructing official business.
 {¶ 6} Thereafter, the trial court immediately stopped the proceedings. Outside the presence of the jury and at the trial court's invitation, appellee's defense counsel moved to reopen the suppression issue. The trial court granted defense counsel's request and declared a mistrial. Thereafter, the trial court entered a judgment entry on August 22, 2002, granting appellee's motion to suppress. The trial court determined that appellee had rebuffed Officer Diels' attempted consensual encounter and therefore, the subsequent knock on the door of the motel room conveyed to appellee that he was not free to leave. Judgment Entry, Aug. 22, 2002, at 5.
 {¶ 7} The State timely filed a notice of appeal of the trial court's decision granting the motion to suppress and sets forth the following sole assignment of error for our consideration:
 {¶ 8} "I. The trial court erroneously suppressed evidence on fourth amendment grounds by finding that a Canton Police Officer unlawfully knocked on a motel room door."
 I {¶ 9} In its sole assignment of error, the state maintains the trial court erred when it granted appellee's motion to suppress because, under the circumstances, appellee's location, reaction and flight raised a reasonable suspicion of criminal activity and therefore, Officer Diels did not act unlawfully when he knocked on the door of the motel room. We agree.
 {¶ 10} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, reversed on other grounds.
 {¶ 11} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623. In the case sub judice, the state alleges the trial court incorrectly decided the ultimate issue in the motion to suppress, that is, whether Officer Diels unlawfully knocked on the door of the motel room. Therefore, we must determine, without deference to the trial court, whether the facts meet the appropriate legal standard.
 {¶ 12} In its judgment entry, the trial court explained there exists three types of police/citizen encounters. The first type is the consensual encounter. This type of encounter occurs when a police officer merely approaches a citizen, in a public place, and requests information. Cooperation by the citizen is voluntary and no evidence of wrongdoing is required. "Encounters are consensual when the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away."State v. Taylor (1995), 106 Ohio App.3d 741, 747, citing U.S. v.Mendenhall (1980), 446 U.S. 544, 553.
 {¶ 13} The trial court concluded that the testimony of Officer Diels, at trial, indicated that Officer Diels believed appellee was not free to walk away and when appellee ran to the motel room, Officer Diels considered appellee's actions an obstruction of an official investigation. Judgment Entry, Aug. 22, 2002, at 3. The trial court further concluded that when Officer Diels knocked on the door of the motel room, he conveyed to appellee that appellee could not refuse to cooperate. Id. Thus, the trial court found the first contact Officer Diels had with appellee was not consensual and therefore, the knocking on the door could not have been the continuation of a consensual encounter. Id.
 {¶ 14} The second type of police/citizen encounter is an investigatory stop. An investigatory stop must be based upon reasonable suspicion of criminal activity, supported by specific articulable facts pointing towards a citizen's involvement in criminal activity. Terry v.Ohio (1968), 392 U.S. 1. The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.Illinois v. Wardlow (2000), 528 U.S. 119, 125. The trial court concluded there were not specific articulable facts pointing towards appellee's involvement in criminal activity. Judgment Entry, Aug. 22, 2002, at 4. Therefore, the trial court concluded the encounter was not an investigatory stop authorized by Terry.
 {¶ 15} The third type of police/citizen encounter is an arrest. An arrest may only occur based upon probable cause to believe a citizen has committed an offense. Beck v. Ohio (1964), 379 U.S. 89. The trial court found probable cause did not exist to believe appellee had committed an offense. Judgment Entry, Aug. 22, 2002, at 4.
 {¶ 16} The trial court granted the motion to suppress on the basis that the initial stop of appellee did not fall into any of the permissible police/citizen encounters. Id. The trial court specifically stated, "* * * [A]n officer can[not] approach and knock on the door of the motel room when that officer while on patrol in a high crime area late at night only witness (sic) the Defendant sitting on the ground outside a motel room and upon summoning the Defendant over to the patrol car, the Defendant stood up and ran into the motel room." Id. at 5.
 {¶ 17} Although we disagree with the trial court's ultimate conclusion, we do find the trial court properly phrased the issue in this case when it stated, at the suppression hearing, "* * * [W]hat gets them [Officer Diels] to the door?" Tr. Suppression Hrng., June 3, 2002, at 44. In analyzing this issue, we must consider each act of Officer Diels and appellee separately in order to determine whether Officer Diels lawfully knocked on the door of the motel room.
 {¶ 18} The first act we must consider is the initial observation Officer Diels made of appellee. The facts in the record indicate Officer Diels and his partner were on routine patrol, at the Towne Manor Motel, when they observed appellee sitting, by himself, outside Room 90. Id. at 8, 19. Officer Diels did not observe appellee committing any criminal activity. Id. at 19. However, Officer Diels knows this area has a large drug problem and the police have made numerous arrests for drug possession at this motel. Id. at 8, 18, 19-20.
 {¶ 19} In Wardlow, the United States Supreme Court explained that a person's presence in a high crime area may be considered in determining whether further investigation is warranted. The Court stated:
 {¶ 20} "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v.Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.E.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a `high crime area' among the relevant contextual considerations in a Terry analysis. Adams v. Williams,407 U.S. 143, 144, 147-148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)." Id. at 124.
 {¶ 21} At this point in time, there was no encounter between Officer Diels and appellee. Officer Diels merely made an observation of appellee.
 {¶ 22} The second act we must consider involves the initial encounter between Officer Diels and appellee. This encounter occurred when Officer Diels asked appellee to come over to the cruiser. Officer Diels' request, to appellee, was a consensual encounter which occurs "* * * when the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." Taylor at 747, citing Mendenhall at 553. Cooperation in this type of encounter is voluntary and no evidence of wrongdoing is required. Therefore, under the facts of this case, Officer Diels had the right to ask appellee to approach the cruiser, as a consensual encounter, and appellee had the right not to answer and walk away.
 {¶ 23} The third act we must consider in determining whether Officer Diels unlawfully knocked on the door of the motel room was appellee's conduct of running to the motel room and shutting the door. At the suppression hearing, Officer Diels testified that after he asked appellee to approach the cruiser, appellee immediately jumped up from where he was sitting and ran to the motel room, shutting the door behind him. Tr. Suppression Hrng., June 3, 2002, at 9, 10, 21. In Florida v.Royer (1983), 460 U.S. 491, 498, the United States Supreme Court held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. Further, any "* * * refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Florida v. Bostick
(1991), 501 U.S. 429, 437. Thus, according to these decisions, once Officer Diels asked appellee to approach the cruiser, appellee had every right to refuse to speak to Officer Diels and to walk away and enter his motel room.
 {¶ 24} However, the United States Supreme Court has also held that:
 {¶ 25} "* * * [U]nprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not `going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police investigation." Wardlow
at 125.
 {¶ 26} Further, "[h]eadlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Id. at 124.
 {¶ 27} Therefore, when appellee made the decision to run to his motel room, after being asked to approach the cruiser, this encounter changed from a consensual encounter, to an investigatory stop. At that point, Officer Diels, using common sense judgment and inferences about human behavior, had a reasonable suspicion to further investigate. This suspicion was based upon appellee's presence in a known drug area and his decision to run from Officer Diels. Clearly, appellee could have walked away from Officer Diels or remained seated and refused to answer questions. However, his decision to run and his presence in a known drug area, were suggestive of wrongdoing and therefore, Officer Diels lawfully approached the door of the motel and knocked to further investigate.
 {¶ 28} Once the encounter became investigatory rather than consensual, the trial court was correct in concluding that appellee was no longer free to leave. As an investigatory stop under Terry[1], had Officer Diels not observed facts giving rise to probable cause, appellee would have been free to go about his business. However, as the record indicates, Officer Diels did observe facts, giving rise to probable cause, and therefore appellee was arrested.[2]
 {¶ 29} The state's sole assignment of error is sustained.
 {¶ 30} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
By: Wise, J., Gwin, P.J., and Boggins, J., concur.
[1] In Terry, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus.
[2] The trial court determined consent was voluntarily given to Officer Diels to enter the room and the crack cocaine retrieved from the toilet bowl and the marijuana retrieved from appellee and from the female occupant of the room were all incident to lawful searches. Judgment Entry, Aug. 22, 2002, at fn. 1.